Matthew A. Jenkins, Esq. (SBN 356880)
matt@matthewajenkinslaw.com
**LAW OFFICE OF MATTHEW A. JENKINS**
18000 Studebaker Rd, Ste 700
Cerritos, CA 90703
Tel: (213) 304-5700

Scott D. Owens, Esq. (*pro hac vice application forthcoming*)
scott@scottdowens.com
**SCOTT D. OWENS, P.A.**
2750 N. 29th Ave., Ste. 209A
Hollywood, FL 33020
Tel: (954) 589-0588

*Attorneys for Plaintiff and the Proposed Class*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

DEMI MARTIN, individually and on behalf of a class of other similarly situated individuals,

*Plaintiff*,

v.

CIDER (US) HOLDING, LTD., a California corporation, d/b/a shopcider.com

*Defendant*.

**CASE NO:**

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff, Demi Martin, hereby sues Defendant Cider (US) Holding, Ltd., d/b/a shopcider.com, and alleges the following upon personal knowledge as to Plaintiff's own acts and experiences, and, as to all other matters alleged herein, upon information and belief, including, but not limited to, investigation conducted by Plaintiff's attorneys.

## NATURE OF THE ACTION

1. This is an action for statutory damages against Defendant arising from violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. ("TCPA") and its enabling statutes, 47 C.F.R. §§ 64.1200 et seq.

2. Specifically, and in order to promote the sale of its goods and services, Defendant engages in the practice of sending unwanted text messages to consumers after they have affirmatively opted-out of Defendant's solicitations.

3. By way of this action, Plaintiff seeks injunctive relief to halt Defendant's illegal conduct, which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the daily life of thousands of individuals. Plaintiff also seeks statutory damages on behalf of Plaintiff and members of the Class, and any other available legal or equitable remedies.

## JURISDICTION

4. This Court has federal question subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, a federal law.

5. This Court has personal jurisdiction over Defendant because Defendant is headquartered in this District and maintains its principal place of business in Los Angeles County, California. Defendant's decisions regarding the marketing, administration, and operation of its nationwide text-message marketing program were made, directed, authorized, and/or implemented from this District. Plaintiff's claims arise directly from Defendant's conduct in administering and transmitting the text-message campaign at issue and Defendant's failure to maintain and enforce legally compliant opt-out procedures. Accordingly, Defendant is subject to general and specific personal jurisdiction in this District.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (2). Defendant resides in this District because it maintains its principal place of

business here and is subject to personal jurisdiction in this District. In addition, a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District because Defendant's text-message marketing operations, compliance decisions, consumer opt-out procedures, and related business records are maintained, directed, or controlled from this District. The text messages at issue were received by Plaintiff in this District, and the injuries complained of herein occurred in this District.

## PARTIES

7. Plaintiff is a natural person who, at all times relevant to this action, was a resident of Los Angeles County, California.

8. Defendant is a corporation organized under the laws of Delaware with its principal place of business at 2977 Allesandro Street, Los Angeles, California 90039. Defendant conducts business throughout the United States, including California.

9. Upon information and belief, Defendant's nationwide text-message marketing program is administered, supervised, managed, or controlled from Defendant's headquarters in Los Angeles County, California. The policies, procedures, and practices governing consumer opt-out requests and Defendant's internal do-not-call compliance program were developed, implemented, maintained, and/or overseen from California.

## FACTUAL ALLEGATIONS

10. Within the time frame relevant to this action, Defendant caused multiple telemarketing text messages to be transmitted to Plaintiff's cellular telephone after Plaintiff affirmatively opted out of receipt of such text messages.

11. Plaintiff is the regular user of the cellular telephone that received Defendant's text message solicitations.

12. Plaintiff utilizes the cellular telephone that received Defendant's text

messages solely for personal purposes; the number is Plaintiff's residential phone line.

13. On or about April 24, 2026, Plaintiff received a text message from Defendant, and subsequently requested to opt-out of Defendant's text messaging program by replying to Defendant's text message with the word "**stop**[1]."

14. Contrary to Defendant's assurance that she would no longer receive messages from Cider, Defendant, in reality, ignored Plaintiff's request and continued sending text messages to Plaintiff, including, but not limited to, on or about:

a. May 15, 2026; b. May 20, 2026; c. May 24, 2026

d. June 5, 2026; e. June 7, 2026 f. June 12, 2026

15. Upon receipt of each of the foregoing text messages, Plaintiff replied to Defendant with the word "**stop**" in an effort to revoke any prior consent and opt out of future text message solicitations.

16. The purpose of Defendant's text messages was to solicit the sale of consumer goods, services, and/or property. For example, the following is illustrative of the text message Plaintiff received on May 15, 2026.

[1] 47 C.F.R. § 64.1200(a)(10) — a reply text with the word "stop" is a reasonable means per se to revoke consent. *See, e.g., Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1048 (9th Cir. 2017).




17. The text message was sent from short code 20398, which Cider uses to disseminate its text messages.

18. As demonstrated by Defendant's conduct, Defendant does not honor consumer requests to opt-out of text message solicitations; Defendant has previously been sued for substantially similar TCPA violations, including actions alleging that Defendant continued sending text message solicitations after consumers attempted to opt out[2].

19. Defendant's repeated failure to honor Plaintiff's opt-out requests is evidence that Defendant failed to adequately implement, maintain, or enforce procedures reasonably designed to ensure that consumers who revoke consent are not sent additional telemarketing text messages[3].

20. Further evidence of Defendant's failure to maintain an internal Do Not

---

[2] See, e.g., *Taylor v. Cider*, No. 25-cv-24496 (S.D. Fla. Filed 9/30/25); *Diez v. Cider (US) Holding Limited*, 25-cv-24394 (S.D. Fla. Filed Sept. 24, 2025).

[3] 47 C.F.R. § 64.1200(d) — *Powers v. One Technologies, LLC*, No. 3:21-CV-2091 (N.D. Tex. 2022) – Held that a plaintiff could sue a company for sending telemarketing communications when that company lacked a procedure for maintaining a do-not-call list.

Call list is reflected by the fact that Plaintiff made multiple opt-out requests that were never processed; the requests were simply ignored by Defendant and its employees.

21. Defendant's refusal to stop sending text messages caused Plaintiff cognizable injury. Each unlawful text message occupied Plaintiff's cellular telephone, diverted Plaintiff's attention from other activities, wasted Plaintiff's time reviewing and addressing the messages, and intruded upon Plaintiff's privacy.

22. The injuries suffered by Plaintiff are representative of the injuries suffered by members of the proposed Class.

## CLASS ALLEGATIONS

23. Plaintiff, individually, and on behalf of a class of other similarly situated individuals, brings this action pursuant to Fed. R. Civ. 23:

> **The Internal Do Not Call Class**
> All persons in the United States who, within the four years prior to the filing of this action through the date of class certification, sent a text message to Defendant revoking consent or opting out of receiving text messages in a manner consistent with 47 C.F.R. § 64.1200(a)(10), and who subsequently received one or more text messages from Defendant after such revocation request.

24. Excluded from the Class are: (1) any Judge presiding over this action, members of their immediate families, and Court Staff; and (2) Defendant, its subsidiaries, parent companies, successors, predecessors, and any entity in which Defendant, or its parents, have a controlling interest, and its current or former officers and directors.

25. **Numerosity**: Defendant markets its products nationwide through large-scale SMS campaigns reaching thousands of consumers. Given the volume of Defendant's text message marketing and the centralized nature of Defendant's opt-out procedures, Plaintiff reasonably believes the proposed Class consists of at least hundreds, and likely thousands, of individuals.

26. **Commonality**: There are questions of law and fact common to all the

members of the proposed Class that predominate over any questions affecting only individual members. They include:

a) Whether Defendant initiated telemarketing text messages to Plaintiff and the Class members;

b) Whether Defendant continued to send text message solicitations after opt-out requests;

c) Whether Defendant maintains an internal do-not-call list and instructs their employees on how to use the list;

d) Whether Defendant's conduct was willful or knowing; and

e) Whether Defendant is liable for damages, and the amount of such damages.

27. **Predominance**: Common questions of law and fact predominate over any questions affecting only individual Class members. Liability can be established through common evidence regarding Defendant's uniform policies, practices, and procedures for processing consumer opt-out requests and maintaining an internal do-not-call list. The central issues in this case—whether Defendant failed to maintain procedures required by 47 C.F.R. § 64.1200(d), whether Defendant failed to honor consumers' opt-out requests, and whether Defendant's conduct was knowing or willful—are capable of classwide resolution and do not depend upon individualized inquiries. Accordingly, the predominating issues are subject to common proof applicable to all members of the Class.

28. **Typicality**: Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

29. **Adequacy**: Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class, and has retained competent counsel experienced in TCPA class action litigation. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

30. **Superiority**. A class action is superior to all other available methods

for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

31. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

**COUNT I**
**VIOLATION OF 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(d)**
**(On behalf of Plaintiff and the Internal Do Not Call Class)**

32. Plaintiff realleges and incorporates the foregoing allegations set forth in paragraphs 1 through 31 as if fully set forth herein.

33. In pertinent part, 47 C.F.R. § 64.1200(d) provides:

> No person or entity shall initiate any artificial or prerecorded-voice telephone call pursuant to an exemption under paragraphs (a)(3)(ii) through (v) of this section or any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive such calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:
>
> (1) *Written policy*. Persons or entities making calls for telemarketing purposes must Persons or entities

making artificial or prerecorded-voice telephone calls pursuant to an exemption under paragraphs (a)(3)(ii) through (v) of this section or calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) *Training of personnel engaged in telemarketing*. Personnel engaged in making artificial or prerecorded-voice telephone calls pursuant to an exemption under paragraphs (a)(3)(ii) through (v) of this section or who are engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) *Recording, disclosure of do-not-call requests*. If a person or entity making an artificial or prerecorded-voice telephone call pursuant to an exemption under paragraphs (a)(3)(ii) through (v) of this section or any call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making such calls (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed ten (10) business days from the receipt of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the call is made, the person or entity on whose behalf the call is made will be liable for any failures to honor the do-not-call request. A person or entity making an artificial or prerecorded-voice telephone call pursuant to an exemption under paragraphs (a)(3)(ii) through (v) or any call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a call is made or an affiliated entity..

34. Under 47 C.F.R § 64.1200(e), the rules set forth in 47 C.F.R. § 64.1200(d) are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers.

35. Plaintiff and the Internal Do Not Call Class members made requests to Defendant not to receive calls from Defendant.

36. Defendant knowingly and willfully failed to honor Plaintiff and the Internal Do Not Call Class members' opt-out requests.

37. Defendant's refusal to honor opt-out requests is indicative of Defendant's failure to implement a written policy for maintaining a do-not-call list and to train its personnel engaged in telemarketing on the existence and use of the do-not-call-list.

38. Therefore, Defendant has violated 47 C.F.R. § 64.1200(d).

39. Pursuant to section 227(c)(5) of the TCPA, and as a result of Defendant's knowing or willful conduct, Plaintiff and the Internal Do Not Call Class members are entitled to an award of $1,500.00 in statutory damages per violation.

40. Pursuant to section 227(c)(5) of the TCPA, Plaintiff and the Internal Do Not Call Class members are, at a minimum, entitled to an award of $500.00 in statutory damages, for each and every violation held to be due merely to negligence.

41. Plaintiff and the Internal Do Not Call Class members are also entitled to and seek injunctive relief prohibiting Defendant's illegal conduct in the future, pursuant to section 227(c)(5).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, respectfully requests the following relief:

a) An order certifying this case as a class action on behalf of the Class as defined above, and appointing Plaintiff as the representative of the Class and Plaintiff's counsel as Class Counsel;

b) An award of statutory damages for Plaintiff and each member of the Class as applicable under the TCPA;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to comply with 47 C.F.R. § 64.1200(d) by (1) maintaining the required written policies; (2) providing training to its personnel engaged in telemarketing; and (3) maintaining and honoring a do-not-call list; and

e) Such other and further relief as the Court deems reasonable.

## JURY DEMAND

Plaintiff hereby requests trial by jury.

## DOCUMENT PRESERVATION DEMAND

Plaintiff demands that Defendant takes affirmative steps to preserve all records, lists, electronic databases or other itemization of telephone numbers associated with Defendant and the communication or transmittal of the text messages as alleged herein.

DATED: June 17, 2026

Respectfully submitted,

**LAW OFFICE OF MATTHEW A. JENKINS**

*/s/ Matthew A. Jenkins*
Matthew A. Jenkins, Esq. (SBN 356880)

Scott D. Owens, Esq.*
scott@scottdowens.com
**SCOTT D. OWENS, P.A.**
2750 N. 29th Ave., Ste. 209A
Hollywood, FL 33020
Tel: (954) 589-0588

**pro hac vice application forthcoming*